```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Sherry Lynn Hively,            :

      Plaintiff,           : Case No.  2:15-cv-1138

   v.                          : CHIEF JUDGE EDMUND A. SARGUS, JR.

Carolyn W. Colvin, Acting      : Magistrate Judge Kemp
Commissioner of Social Security,

      Defendant.           :


## REPORT AND RECOMMENDATION

### I.  Introduction

Plaintiff, Sherry Lynn Hively, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.  Those applications were filed on October 26, 2011, and alleged that Plaintiff became disabled on December 26, 2010.

After initial administrative denials of her claim, Plaintiff was given a video hearing before an Administrative Law Judge on September 26, 2013.  In a decision dated October 31, 2013, the ALJ denied benefits.  That became the Commissioner's final decision on February 3, 2015, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on June 22, 2015.  Plaintiff filed her statement of specific errors on September 4, 2015, to which the Commissioner responded on November 9, 2015.  Plaintiff filed a reply brief on November 23, 2015, and the case is now ready to decide.

### II.  The Lay Testimony at the Administrative Hearing

Plaintiff, who was 34 years old at the time of the administrative hearing and who discontinued her schooling before

graduating, testified as follows. Her testimony appears at pages 51-59 of the administrative record.

Plaintiff's last job was in the laundry department of a rest home. She did that for almost four years, but was terminated for missing work. She also said that she was on an insulin pump for diabetes and took several other medications.

As far as household chores and daily activities, Plaintiff testified that she did some of the housework and some of the cooking. She could drive and go grocery shopping. She had not been looking for work, and went to as many as five doctors' appointments each month, including blood work.

Plaintiff wore a special shoe which was prescribed by her doctor. They were orthopedic shoes, and she wore them all the time. She also testified that she got Bs and Cs in school and never obtained her GED.

### III. The Medical Records

The medical records in this case are found beginning on page 287 of the administrative record. The Court will summarize those records, as well as the opinions of the state agency reviewers, to the extent that they are pertinent to Plaintiff's statement of errors.

Plaintiff reported bilateral hand pain to Dr. Nau, her primary care physician, in August and September, 2011. She described numbness as well and said it had been present for several months. Splints had not helped. She was dropping things. Her wrists were normal to inspection and palpation and her strength was 5/5 bilaterally. Two tests (Phalen's test and Tinel's sign) were positive bilaterally, however. Dr. Nau diagnosed carpal tunnel syndrome - a diagnosis also based on EMG results - and by September 14, 2011, had recommended surgery. (Tr. 416-18).

A note from Dr. Nau dated April 16, 2012, shows that

Plaintiff was reporting right wrist pain, with a gradual onset spanning two weeks. It was getting worse, and was painful with usage. A Finkelstein's test (used to diagnose De Quervain's tenosynovitis, and which involves some manipulation of the thumb, fingers, and wrist) was positive. (Tr. 386-87). A surgical referral was made, but Plaintiff did not follow up at that time because the condition improved. (Tr. 405).

The surgery on Plaintiff's left wrist occurred on May 18, 2012, and was performed by Dr. Holt. At a follow-up visit, Dr. Holt noted that Plaintiff still had occasional tingling but good range of motion. She wanted to wait to have the right wrist done. (Tr. 497). Plaintiff was still having some shooting pains as well as occasional tingling and numbness in the morning. She also reported decreased strength. There was some thickening of the incision, and Dr. Holt concluded that she was still healing. (Tr. 496). During this time, Plaintiff underwent a functional capacity evaluation in July, 2012, which involved two days of testing. Plaintiff's diagnoses at that time were diabetes and left hand surgery. She gave maximal effort on the test and had no discomfort lifting heavy weights. She demonstrated weak left hand grip, however. (Tr. 427-28).

Plaintiff had her right wrist operated on in April, 2013. Dr. Brautigan did that surgery. It went without complications, but Dr. Brautigan noted that her transverse carpal ligament was very thick. (Tr. 489). At the first recheck, her numbness had improved significantly. That continued to be the case, but four months post-surgery she was still reporting pain over the incision site. (Tr. 486). Shortly prior to that visit, Dr. Brautigan wrote a short note indicating that Plaintiff was "quite disabled" by her bilateral carpal tunnel syndrome and that "[r]epetitive hand motions or heavy manipulation with her hands is something that she cannot sustain." He thought she was

restricted to lifting five to eight pounds on a repetitive basis. (Tr. 495).

Two state agency physicians reviewed the records. Dr. Bolz, in a document dated January 8, 2012, which predated both surgeries, concluded that Plaintiff was limited to light work with a limited ability to do gross manipulation with both hands and with a limited ability to push or pull with both upper extremities. (Tr. 64-67). Dr. Manos reached a similar conclusion on May 9, 2012, noting that she was limited to frequent handling due to numbness. (Tr. 84-87).

Finally, Plaintiff did submit some additional medical records after the ALJ's decision was rendered. They showed another wrist surgery by Dr. Brautigan on December 3, 2013, preceded by a note from Dr. Brautigan dated November 18, 2013, in which he noted that Plaintiff had a recurrence of her De Quervain's tenosynovitis, causing severe pain, and for which he recommended the surgery. (Tr. 516-21). Dr. Brautigan also completed a residual functional capacity report on February 24, 2104, containing a number of work-preclusive restrictions, which he attributed both to diabetes with diabetic neuropathy and the problems with her wrists. (Tr. 11-15). At that time, she was reporting pain in both wrists, but had returned to factory work for financial reasons. (Tr. 16). Later tests showed a recurrence of carpal tunnel syndrome. (Tr. 21).

### IV. The Vocational Testimony

Nancy Shapiro, a vocational expert, testified at the administrative hearing. Her testimony begins at page 59 of the administrative record.

Ms. Shapiro began by testifying about Plaintiff's past relevant work. She said that her work in the home health area was medium ans semiskilled, and that Plaintiff also had experience in the secretarial area (a sedentary job) and as a

-4-

laundry worker, which was medium.

Ms. Shapiro was then asked to answer some questions about a hypothetical person who could not do repetitive hand motion and could lift no more than five to eight pounds on a repetitive basis. According to Ms. Shapiro, no jobs would be available for such a person. She explained that at the sedentary level, repetitive use of the hands is always required, even for a job like surveillance system monitor, which required repetitive hand movement at times.

## V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 30-38 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2013. Next, he found that she had not engaged in substantial gainful activity since her onset date of December 26, 2010. Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including bilateral carpal tunnel syndrome, diabetes mellitus, and plantar fasciitis. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform medium work as defined in 20 C.F.R. §§404.1567(c) and 416.967(c). That ability was consistent with the demands of one of Plaintiff's past jobs, that of secretary. Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

## VI. Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises these

issues. She asserts (1) that the ALJ violated the treating source rule in his evaluation of Dr. Brautigan's opinions, and (2) that a sentence six remand is necessary because the Appeals Council erred in its consideration of new and material evidence. The first issue is considered under the following legal standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A. Dr. Brautigan's Opinions

As it does in many cases where the sufficiency of the ALJ's reasoning in rejecting the opinion of a treating physician is at

issue, the Court begins its analysis with a close look at how the ALJ decided the matter. Here is how the ALJ explained his decision about how much weight to accord not just to Dr. Brautigan's opinions, but to all of the medical opinions found in the record.

First, without reference either to Dr. Brautigan's or any other medical opinions, the ALJ reviewed the treatment records concerning Plaintiff's carpal tunnel syndrome and De Quervain's tenosynovitis and concluded that those records did not "warrant restrictions beyond the established residual functional capacity" - which did not include any limitations on Plaintiff's use of her wrists, hands, or fingers. (Tr. 35). It appears the ALJ reached that conclusion because he interpreted the medical records to show that all of her wrist problems had been successfully treated with either surgery or injections and that all of her symptoms had resolved. The ALJ's decision later confirms that he viewed the records that way; he gave only limited weight to the opinions of the state agency physicians, Drs. Bolz and Manos, on the question of wrist restrictions, noting that "the claimant's carpal tunnel surgeries have been successful to resolve her numbness and neurological symptoms." (Tr. 36). The ALJ also rejected the results of the functional capacity testing, which showed both left wrist weakness and an inability to lift more than 25 pounds, as not coming from a medical source and as inconsistent with a notation in one medical report (the one from Dr. Holt which was made five months after her left carpal tunnel surgery) that she had "good strength." (Tr. 496).

Finally, turning to Dr. Brautigan's opinion, the ALJ said this:

> The claimant's treating orthopedist, Brad Brautigan, M.D., submitted a letter dated July 22, 2013. ... Dr. Brautigan opined that the claimant suffers from type I insulin diabetes and bilateral carpal tunnel syndrome, which makes her "quite

-7-

> disabled." Specifically, he noted that the claimant has a very difficult time with manual tasks and she cannot sustain repetitive hand motions or heavy manipulation wit her hands. Hence, he concluded she has a work restriction of lifting no greater than five to eight pounds on a repeated basis. ... This opinion is given limited weight. Although Dr. Brautigan is a treating physician, his findings are inconsistent with the claimant's treatment records. Specifically, her examinations reflect intact sensation to light touch, no areas of altered sensation or hypersensitivity, no atrophy or deformity, a good range of motion, and good strength. ... Moreover, her carpal tunnel surgeries were successful.

(Tr. 37). Plaintiff argues that the ALJ did not follow the proper method of analysis for treating source opinions, never finding that the opinion was not supported by medically acceptable clinical or diagnostic techniques, and that the ALJ incorrectly determined that Dr. Brautigan's opinions were inconsistent with the medical evidence of record. Among other reasons, Plaintiff points out that all of the allegedly inconsistent treatment notes are from 2012, which was prior to the right carpal tunnel surgery. Lastly, she claims that there is nothing in the record supporting the ALJ's own interpretation of the medical records, and that a successful surgical procedure cannot be equated with a resolution of the problems that created the need for surgery in the first instance.

    It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c)(if "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner]

will give it controlling weight"); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

    The Court finds Plaintiff's arguments about the insufficiency of the ALJ's decision-making process to be persuasive.  First, the ALJ did not discuss whether Dr. Brautigan's opinions (or the opinions of the state agency physicians, for that matter) were "well-supported by medically acceptable clinical and laboratory diagnostic techniques," something which §404.1527(c) requires to be done before discounting a treating source opinion.  The ALJ did discuss other reasons for giving that opinion less than controlling weight but "these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight" based on the two criteria set forth in the opening portion of §404.1527(c).  Gayheart v. Comm'r of Social Security, 710 F.3d 365, 376 (6th Cir. 2013).

Second, and more significantly, the ALJ engaged in an impermissible interpretation of the medical evidence, and did so without any support from the record.  It appears, for example, that he rejected both state agency physicians' opinions as to Plaintiff's lifting capacity - they both limited it to 20 pounds occasionally and ten pounds frequently - simply because one post-operative report dealing with Plaintiff's left wrist issue showed "normal strength."  It is hard to see how that comment relates to her overall lifting ability with both hands.  He did the same for the physical capacity evaluation even though Plaintiff gave maximal effort during that evaluation and her ability to lift was actually tested.  Further, the  comment relied upon by the ALJ came prior to the right carpal tunnel surgery and was made at a time when that condition was still present.  A reasonable person could not have interpreted that isolated comment as a medical conclusion about the extent of Plaintiff's ability to lift and carry, both occasionally and repetitively, in a work setting.

Additionally, Plaintiff is correct that there is not a necessary correlation between the successful nature of a surgical procedure and total resolution of the issue which precipitated the surgery, especially when carpal tunnel syndrome affects repetitive, rather than occasional, use of the hands and wrists.  Dr. Holt's note, relied heavily upon by the ALJ, does not address the issue of repetitive use of the left wrist or hand at all.  Further, the note does not demonstrate complete resolution of the problem; Dr. Holt reported abnormal signs including thickness in the incision area and some tenderness.  Also, at that office visit, Plaintiff reported occasional numbness or tingling in the morning, some lack of sensitivity of touch, and occasional shooting pains in the incision area, none of which were contradicted by the objective findings, and none of which were addressed by the ALJ.  The same can be said for Dr. Brautigan's June 20, 2013 note, also relied on by the ALJ, which reports pain

-10-

over the incision site but a resolution of numbness.  Although that note does not address whether Plaintiff was, after surgery, able to resume normal lifting and other repetitive activities with either hand or wrist, Dr. Brautigan's opinion, which came only a month later, affirmatively addresses that question, saying that she could not.  The ALJ simply chose to interpret the earlier treatment note as being inconsistent with the opinion even though they do not address the same aspects of Plaintiff's functional capacity.

In many respects, this case is very similar to another case recently decided by this Court, Mabra v. Commissioner of Social Sec., 2012 WL 2319245 (S.D. Ohio June 19, 2012), adopted and affirmed 2012 WL 3600127 (S.D. Ohio Aug. 21, 2012).  There, Magistrate Judge Deavers extensively recited the law concerning an ALJ's duty not to engage in an independent, and unsupported, analysis of the medical evidence, noting that some courts had even gone so far as to hold that an ALJ may never make a residual functional capacity finding on the basis of "bare medical findings" without some expert interpretation of those findings. Id. at *9-10, citing Roso v. Comm'r of Soc. Sec., 2010 WL 1254831, *8 (N.D. Ohio March 11, 2010).  While there may be cases in which an ALJ's own interpretation of medical findings is permissible, at least to some extent, this is not one of them. The conclusion the ALJ drew here is that someone who has suffered from carpal tunnel syndrome and De Quervain's tenosynovitis, and has had two surgeries which did not produce any significant complications, must be able to lift up to fifty pounds occasionally and 25 pounds frequently with absolutely no restrictions on the repetitive use of the hands for either fine or gross manipulation.  To draw that conclusion without any expert support would, under Mabra and the cases cited therein, be questionable; to do so in a way that contradicts all of the medical opinions of record, including the opinion of the treating

physician, and to rely on that physician's own records in reaching that conclusion, is reversible error. Plaintiff may not be as limited as Dr. Brautigan has concluded, but there is no reasonable support for the ALJ's conclusion that she was capable of medium work without any limitations at all, including limitations on repetitive lifting and repetitive hand movements. A remand under sentence four is therefore required.

### B. Sentence Six Remand

Plaintiff has also moved for a sentence six remand. The disposition of her request for a sentence four remand moots that issue. The ALJ should, however, consider the additional evidence, especially as it relates to the recurrence of symptoms of De Quervain's tenosynovitis in 2013 and the impact that Plaintiff's return to work had on her carpal tunnel syndrome.

### VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained and that the case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

### VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to

-12-

object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

                                            <u>/s/ Terence P. Kemp</u>
                                            United States Magistrate Judge